## S. D. Stocks and Thos. Monroe v. T. H. Scott.

1. ESTOPPEL—*To Urge Misrepresentations.*—Where the purchaser of a real estate brokerage business has an opportunity to examine the books of the party selling to see the extent of the business, he should not be permitted to urge that it was misrepresented.

Assumpsit, on promissory notes. Appeal from the Circuit Court of Moultrie County; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the November term, 1899. Affirmed. Opinion filed June 12, 1900.

HARBAUGH & WHITAKER and MILLS BROS., attorneys for appellants.

E. J. MILLER and EDEN, MARTIN & EDWARDS, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit by appellee against appellants to recover upon three promissory notes, to which appellants, by special plea, interposed as a defense, that the notes were given without consideration, and that the consideration had totally failed.

The trial was by jury, and resulted in a verdict and judgment in favor of appellee for the amount due by the terms of the notes, less the credits indorsed thereon.

This appeal is prosecuted by appellants to reverse that judgment, and the grounds urged for reversal are, that the verdict and judgment are contrary to the law and the evidence; that the court refused proper and admitted improper evidence; and gave improper and refused proper instructions.

The evidence shows that Scott & Glines were conducting a real estate, loan and insurance business in the city of Sullivan, Moultrie county, Illinois, and on April 6, 1896, sold same, together with their office outfit, to appellants, as evidenced by a written agreement as follows:

" This agreement made and entered into this 9th day of April, 1896, by and between Scott & Glines of Sullivan, Ill., party of the first part, and Stocks & Monroe of said city, party of the second part witnesseth:

That the party of the first part has this day sold to the party of the second part their real estate, loan and insurance business in said city, together with office furniture and fixtures, including one Hall's fire proof safe and one No. 4 Yost writing machine, one Edison mimeograph with typewriter attachments, stove, lamps, etc., for the sum of five thousand ($5,000) dollars to be paid as follows, to wit: $1,250 in six months, $1,250 in twelve months, $1,250 in eighteen months, $1,250 in twenty-four months, from this date, for which several amounts said parties of the second part shall give their notes payable as above.

It is further agreed by the party of the first part that whereas, they have on hand the sale of stock of the Moultrie County Abstract Company with commissions thereon

of $650, and a loan pending of $13,000, upon which will be a commission of $650, all of which commission shall go to the party of the second part, and that the said party of the first part shall guarantee said commissions to said second party, said party of the second part to use all diligence to effect the sale of said capital stock of said abstract company and also to assist to closing said loan, all at the expense of the said party of the second part, it is agreed by the party of the second part that the $1,300 above referred to as commissions shall be the limit of the liability of the party of the first part. It is further agreed that said sum of $1,300 above guaranteed, or any part thereof not actually received or collected by said second party, shall be deducted from first and second notes equally.

It is further agreed by the party of the first part that one of them shall stay with and assist said second party with conducting of the business of the office for six months, should said party of the second part so require them to do; and said party shall at all times lend their influence to the said party of the second part until said second party shall be fully established in said business.

It is further agreed by the party of the first part that they will not engage in, organize or establish by themselves or agent any real estate, loan or insurance business in said city of Sullivan, in opposition to the said Stocks & Monroe so long as they may continue in said business, or for a period not to exceed five years.

In witness whereof we have hereunto set our hands and seals the day and year first above written.

|  |  |
|---|---|
| Scott & Glines. | [Seal.] |
| W. O. Glines. | [Seal.] |
| T. H. Scott. | [Seal.] |
| Stocks & Monroe. | [Seal.] |
| S. D. Stocks. | [Seal.] |
| Thomas Monroe. | [Seal.]." |

That appellants executed and delivered the four notes to Scott & Glines, as provided in the agreement, and took possession of the business and office outfit. Scott & Glines performed and kept all the agreements made by them in the contract of purchase. Before sale was made, however, Scott & Glines made a written statement of their business to appellant, as follows:

"Real Estate Business of Scott & Glines.

This statement includes all business done from Oct. 1st,

1894, to Jan. 1st, 1896. Real estate sold during above period, net commissions $11,754.35; commission on insurance during above period, $832.60; commission eastern loans, $1,200.   Total $13,786.95.

This statement does not include any commission on farm rents or city property rents, or any commission on accident insurance or accident tickets, or commission on bicycles, or acknowledgment of deeds or mortgages, or writing farm leases, or chattel mortgages, or commission on private loans; neither does it include over $1,200 in commissions on lands sold in Iowa during the year 1895.   There is over $500 in abstracts for the year 1895 that is not counted in this statement; in short this statement is far short of including all of the business of 1895, and the business reported for the fifteen months will not more than cover the year 1895.

Cash received in 1895, $43,493.56.

W. O. GLINES."

Which they claimed was taken from their books, and their books were given to appellants to examine to see what business had been done by them.   Appellants made such an examination of the books of Scott & Glines, before the sale was made, as they desired.   Appellants paid the note due eighteen months after date, but refused to pay the other three notes given as consideration for the sale. Appellants undertook to show, on trial, that Scott & Glines deceived them, inducing them to purchase by falsely and fraudulently misrepresenting the extent and value of their business to be very much greater than it was, and thereby inducing appellants to pay therefor the amount of the three notes sued on, more than the business and office outfit purchased were worth.

We have examined all the evidence in the record, and are convinced thereby that the verdict rendered is in accordance therewith; for while appellants paid dearly for what they purchased, yet, having had an opportunity before the purchase to examine the books of Scott & Glines to see the extent of business done by them, they ought not to be permitted to urge the same was misrepresented, and that they relied upon such misrepresentation in purchasing.

The rulings of the court on the evidence is not open to the objections urged by appellants against them, for the

court permitted both sides to fully show all they were entitled to show, and properly refused to allow appellants to ask their witnesses leading questions.

The instructions given, which are complained of by appellants, are open to most of the objections urged against them, but as the verdict and judgment rendered are right upon the issues presented by the pleadings and the evidence, appellants have not been prejudiced thereby.

Finding no reversible errors in the proceedings of the court, and upon the whole record, the verdict and judgment being right, the latter will be affirmed. Judgment affirmed.